744 F.2d 1438
 40 Fed.R.Serv.2d 171
 In the Matter of the Sanction of Jay C. BAKER and Michael J.
Carson, Appellants.
George Roland MULVANEY, Plaintiff-Appellant,
v.
RIVAIR FLYING SERVICE, INC., Defendant,
v.
Ed DIETLIN, d/b/a Dietlin Aircraft, Third Party Defendant-Appellant.
 No. 83-1246.
 United States Court of Appeals,
Tenth Circuit.
 Oct. 3, 1984.
 
 Jay C. Baker, Baker & Baker, Tulsa, Okl., and Michael J. Carson, Gann, Yeksavich, Carson & Leonard, Tulsa, Okl., filed a brief for appellants.
 Before HOLLOWAY, SETH, BARRETT, DOYLE, McKAY, LOGAN, SEYMOUR and McWILLIAMS, Circuit Judges.
 OPINION ON REHEARING EN BANC
 McKAY, Circuit Judge.
 
 
 1
 After the panel decision in this case, the court determined to consider en banc some of the growing number of sanctions cases. We therefore ordered the recall of the mandate and here consider the issues raised in this case en banc along with D & H Marketers, Inc. v. Freedom Oil & Gas, Inc., 744 F.2d 1443 (10th Cir.1984), also decided today.
 
 
 2
 The case out of which this appeal arises was set for trial on January 17, 1983. Not long before trial, the defendant in this three-party action sought a continuance for the convenience of counsel. The court indicated, by denying the motion, the urgency of its need to abide with the scheduled jury trial. Thereafter, four days before trial, the third-party defendant moved for a continuance based on a failure to depose a critical witness. That motion was heard on the day scheduled for trial. Counsel for plaintiff, although announcing his readiness for trial, candidly advised the court that he might be responsible, at least in part, for counsel's inability to take the deposition in question. The parties had tried to agree on a mutually acceptable time for the deposition but that effort had failed. In any event, with the trial date approaching and even in the face of the court's previous refusal to grant a continuance because of the absence from the country of chief counsel on one side, the third party defendant had not noticed the deposition or otherwise adequately anticipated the inconvenience that would be caused by not being ready for trial on the long anticipated and set date with a jury planned. The trial court granted the continuance but imposed a $350 sanction on the attorneys for the plaintiff and the third party defendant because of the seriousness of the problems created for the court. The court did not make a finding that there was bad faith but clearly it was concerned that delays caused by negligent counsel burden the taxpayers and the court system.
 
 
 3
 The issue in this case is whether the court abused its discretion by imposing this sanction. See National Hockey League v. Metropolitan Hockey Club, Inc., 427 U.S. 639, 96 S.Ct. 2778, 49 L.Ed.2d 747 (1976). The issue of discretion must not be viewed in isolation. Rather, we must look at the totality of the circumstances, including the specific case under review, the total management problems for courts, and access and cost problems for litigants. The problems of congested calendars and the disgraceful costs of litigation have been so widely discussed that they do not require further documentation. The problems have been encapsulated by the Advisory Committee on Rules in its Notes accompanying the 1983 amendments to Federal Rule of Civil Procedure 16, which governs pretrial management and was amended to alleviate these problems. It is enough to note that the management of cases from the time of filing the complaint until the beginning of trial had become unacceptably long, necessitating amendment of Rule 16. While on the whole Rule 16 is concerned with the mechanics of pretrial scheduling and planning, its spirit, intent and purpose is clearly designed to be broadly remedial, allowing courts to actively manage the preparation of cases for trial. Some dispute may exist concerning the dichotomy among the various authorities on which the courts may rely for sanctions. See, e.g., Federal Rule of Civil Procedure 37, sanctions for failure to make or cooperate in discovery; the court's contempt powers; 28 U.S.C. Sec. 1927, counsel's liability for excessive costs; a variety of provisions for award of attorney's fees to prevailing parties; and the inherent power of the court to control its docket and adjudicatory functions. However, there can be no doubt that subsection (f), added as part of the 1983 amendments to Rule 16, indicates the intent to give courts very broad discretion to use sanctions where necessary to insure not only that lawyers and parties refrain from contumacious behavior, already punishable under the various other rules and statutes, but that they fulfill their high duty to insure the expeditious and sound management of the preparation of cases for trial. Indeed, the Rule suggests a different focus and presumption in the administration of sanctions than do the other available sanction provisions. It provides in part:
 
 
 4
 In lieu of or in addition to any other sanction, the judge shall require the party or the attorney representing him or both to pay the reasonable expenses incurred because of any noncompliance with this rule, including attorney's fees, unless the judge finds that the noncompliance was substantially justified or that other circumstances make an award of expenses unjust.
 
 
 5
 Fed.R.Civ.P. 16(f) (emphasis added).
 
 
 6
 It is clear from the language and the context in which this amendment to the Rule was enacted that neither contumacious attitude nor chronic failure is a necessary threshold to the imposition of sanctions. The intent is to impose the sanction where the fault lies. It is not necessary that the party or the party's lawyer be in violation of a court order as required for the application of Rule 37(b)(1), Federal Rules of Civil Procedure. Both the text and the Notes of the Advisory Committee make clear that concerns about burdens on the court are to receive no less attention than concerns about burdens on opposing parties.
 
 
 7
 While the sanctions imposed in this case occurred shortly before the adoption of the 1983 amendments to Rule 16, the spirit and purpose of those amendments have always been within the inherent power of the courts to manage their affairs as an independent constitutional branch of government. See Roadway Express, Inc. v. Piper, 447 U.S. 752, 764-67, 100 S.Ct. 2455, 2463-65, 65 L.Ed.2d 488 (1980); Link v. Wabash Railroad Co., 370 U.S. 626, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962). Piper held that the court must find bad faith before the sanction of dismissal could be imposed. However, Piper was decided before the amendments to Rule 16 and the sanction imposed was much harsher than the fine imposed here. We therefore examine the issue of abuse of discretion in light not only of the historic powers of the court but in light of these amendments to Rule 16 as well.
 
 
 8
 The primary focus of amended Rule 16 is on the mechanics of pretrial conferences and scheduling. The purpose of Rule 16 is to insure early judicial intervention in the process of trial preparation and proper conduct of that entire process. When viewed in its broad remedial context, subsection (e) contemplates its application to all pretrial management orders. Certainly the sanctions concept contained in subsection (f) is a codification of the purpose to insist that the court, the lawyers and the parties abandon habits which unreasonably delay and otherwise interfere with the expeditious management of trial preparation. There is no reason, either in specific language or logic, for applying sanctions differently to pretrial matters other than the formal conferences defined and expanded in the 1983 amendments to Rule 16.
 
 
 9
 We are not dealing here with the historic concept of contempt. We are not dealing with the traditional award of attorney's fees as an adjunct of success in litigation. Nor are we dealing with the defiant refusal of an attorney or party to comply with some order of the court, such as discovery. Instead, we are dealing with the matter most critical to the court itself: management of its docket and avoidance of unnecessary burdens on the tax-supported courts, opposing parties or both. The primary purpose of sanctions in this context is to insure reasonable management requirements for case preparation. The secondary purpose is to compensate opposing parties for inconvenience and expense incurred because of any noncompliance with the reasonable management orders of the court. Of course the trial court has discretion to withhold the award of expenses, including reasonable attorney's fees, on an affirmative finding that the noncompliance was substantially justified or that other circumstances would make the award unjust.
 
 
 10
 Here, the court had set the case for trial. No one asserts that the parties and their attorneys did not have adequate notice in order to prepare for trial. The record reflects not contumaciousness, but a pattern of negligence. This negligence imposed on the court, on the day trial was scheduled, necessitated the cancelling of the jury trial and either wasting that jury time or trying to reschedule other matters to accommodate the unwarranted delay. As a sanction message to the lawyers involved, as well as to the bar generally, $175 imposed on each lawyer is certainly modest enough to fall well within the realm of the trial court's broad discretion.
 
 
 11
 The trial court could have simply denied the continuance and thus the inconvenience to the court. However, this would turn the purpose of sanctions on their head. Apparently the trial court was impressed that the nondeposed witness was of genuine importance to the merits of the third-party defendant's cause. To have forced that party to go to trial without the advantage of having deposed that witness would have effectively imposed the sanction on the client. It is clear from the record in this case that the interference with sound management of the court was the fault of the lawyers on whom the sanction was imposed--not their clients. It is the trial court's duty, within the spirit of its total powers, including Rule 16, to impose sanctions and compensating awards of expenses, including attorney's fees, in a manner designed to solve the management problem. If the fault lies with the attorneys, that is where the impact of sanction should be lodged. If the fault lies with the clients, that is where the impact of the sanction should be lodged. In this case the trial court lodged the impact of the sanction precisely where it should have, and in modest terms appropriate to the circumstances. There are a broad range of sanctions available to the trial court, but they should be administered and tailored in a manner designed to effectuate the purpose of the sanction and in order of their seriousness as sound discretion dictates.
 
 
 12
 The trial court's determination of the amount of the sanction apparently was based on the estimated expense to the court. However, the context of the trial court's order makes clear that its concern was to get across the message which sanctions are designed to portray--the imperative of expeditious management of preparation of cases for trial. The language of Rule 16(f) is in terms of "reasonable expenses." The Rule does not require that those reasonable expenses be only those of opposing parties. While this may be an issue in future cases, we do not find it necessary to rule on that potential issue here. We do not believe that the cost of the court's inconvenience is a precise measure to be routinely awarded in each and every case of unwarranted delay. At the same time, we do not think that cognizance of the costs imposed upon the judicial system are irrelevant in determining the seriousness and extent of the sanction appropriate in particular cases.
 
 
 13
 We have indicated elsewhere that preclusive sanctions require more serious default than is present in this case. D & H Marketers, Inc. v. Freedom Oil & Gas, Inc., 744 F.2d 1443 (10th Cir.1984); Hollis v. United States, 744 F.2d 1430 (10th Cir.1984). We have also indicated that, as in this case, the trial court should set forth in the record the justification for the sanctions imposed. See Hollis v. United States, at 1433. While the record is not as explicit as it could be, we believe that the context is clear enough to understand the trial court's justification for imposing the sanction. Since both of those standards are satisfied in this case and the sanction imposed is well within the record and the discretion of the trial court, we affirm.
 
 McWILLIAMS, Circuit Judge, dissents:
 
 14
 I respectfully dissent and would adhere to the Order and Judgment of the panel heretofore filed in the instant case on March 13, 1984. Insofar as the record is concerned, the trial judge imposed sanctions without giving any reason. The trial judge did state that the amount of the "fine" or "sanction" was based on a statement made by the Chief Justice in a speech at an A.B.A. meeting.
 
 
 15
 In sum, the record does not support the action taken by the trial judge, and, in my view, the majority has filled in the gaps.