See also 160 F.R.D. 452.

**INTERNATIONAL BROTHERHOOD OF TEAMSTERS, Plaintiff,**

v.

**EASTERN CONFERENCE OF TEAMSTERS, et al., Defendants.**

**CENTRAL CONFERENCE OF TEAMSTERS, et al., Plaintiffs,**

v.

**INTERNATIONAL BROTHERHOOD OF TEAMSTERS, et al., Defendants.**

**Nos. 94 Civ. 1950 (DNE), 94 Civ. 2247 (DNE).**

United States District Court, S.D. New York.

June 15, 1995.

Dickstein, Shapiro & Morin, New York City (Robert J. Higgins, Angelo V. Arcadipane, Woody N. Peterson, of counsel), for plaintiffs.

Cohen, Weiss and Simon, New York City (Richard M. Seltzer, Peter D. DeChiara, Lisa M. Imbrogno, of counsel), Intern. Broth. of Teamsters, Washington, DC (Earl V. Brown, Jr., of counsel), for defendants.

Finkel, Whitefield, Selik, Raymond, Ferrara & Feldman, P.C., Farmington Hills, MI (Bradley T. Raymond, of counsel), for non-party deponents.

## MEMORANDUM & ORDER

EDELSTEIN, District Judge:

This Memorandum and Order emanates from defendants' request, pursuant to Federal Rule of Civil Procedure 16, for a pretrial conference. Defendants seek this conference to resolve a discovery dispute that arose between defendants and certain non-party deponents. Defendants seek discovery from these non-party deponents, and these deponents contend that defendants' discovery requests are unduly burdensome and inquire into matters irrelevant to the instant litigation.

In the instant consolidated action, defendants are the International Brotherhood of Teamsters ("IBT" or "Union") and IBT General President Ronald Carey ("Carey"). Plaintiffs are the Central Conference of Teamsters, the Eastern Conference of Teamsters, the Southern Conference of Teamsters, the Western Conference of Teamsters ("the Conferences"), and various officers who represent these respective conferences.[1] On March 21, 1994, the Union brought an action seeking declaratory relief pursuant to section 301 of the Labor Management Relations Act ("the LMRA"), 29 U.S.C. § 185, and Title I, Title III, and Section 609 of the Labor Management Reporting and Disclosure Act ("LMRDA"), 29 U.S.C. §§ 411 et seq., 461 et seq., and 529.[2] On March 30, 1994, plaintiffs, in turn, brought an action seeking declaratory and injunctive relief pursuant to section 301 of the LMRA, 29 U.S.C. § 185, and sections 101, 302, 304, and 609 of the LMRDA, 29 U.S.C. §§ 411, 462, 464, and 529. These two suits were consolidated into the instant case. See International Bhd. of Teamsters v. Eastern Conference of Teamsters, 94 Civ. 1950 (S.D.N.Y.), Central Conference of Teamsters v. International Bhd. of Teamsters, 94 Civ. 2247 (S.D.N.Y.) (Stipulation and Order, dated June 1, 1994).

Under the IBT Constitution, the Conferences are "organized and chartered as subordinate bodies of the [IBT] for such geographical area, industries or companies as the General Executive Board may from time to time direct." IBT Constitution, Article XVI, section 1. Each of the Conferences was chartered pursuant to this provision.

Plaintiffs contend that, in early 1994, a disagreement erupted between the Conferences and defendant Carey over a proposed increase in Union membership dues. Plaintiffs allege that in January 1994, "defendant Carey advised all IBT affiliates that the Gen-

---

1. The instant case is a consolidation of two actions, one in which the IBT is plaintiff and one in which the IBT is defendant. In the interest of convenience and clarity, this Court will refer to the IBT and IBT General President Carey as "defendants" and will refer to the Conferences and their respective officers as "plaintiffs."

2. In addition, the IBT brought this action as an application to this Court pursuant to the voluntary consent order that the IBT and the United States Government entered into on March 14, 1989.

eral Executive Board had authorized him to 'conduct a mail referendum of the Union's membership on whether to raise dues.'" (Plaintiffs' Complaint ¶ 13 (quoting defendant Carey).) Thereafter, plaintiffs publicly opposed this proposed dues increase. Plaintiffs contend that their opposition sparked a dispute that became increasingly bitter during February and March 1994.

Plaintiffs contend that because of their opposition to this dues increase, defendant Carey sought to revoke the Conferences' respective charters. On March 21, 1994, the IBT brought suit, seeking a declaratory judgment that, *inter alia*, defendants have the authority to revoke the Conferences' respective charters. On the same day, plaintiffs allege that defendant Carey "notified plaintiff Area Conferences and their Chairmen of his intent to abolish the Conferences." (Plaintiffs' Complaint ¶ 17.) On March 30, 1994, plaintiffs brought suit, seeking, *inter alia*, a declaratory judgment that defendants lacked the authority to revoke the Conferences' respective charters. Since the filing of these actions, the parties have engaged in extensive discovery, involving depositions throughout the United States.

By letter, dated April 21, 1995, defendants requested a pre-trial conference, pursuant to Federal Rule of Civil Procedure ("Rule") 16, because "[r]ecurring problems with non-party discovery in these cases demonstrate the need for guidance from this Court." In their letter, defendants referred specifically to subpoenas that defendants served on Richard Leebove, RL Communications, and George Geller, none of whom is a party to the above-captioned litigation ("the non-party deponents"). Defendants represent that the discovery disputes encountered in the context of these non-party depositions are likely to recur in the context of other depositions in this litigation. In fact, this same discovery dispute may well arise during depositions of the plaintiffs themselves.

According to the papers submitted to this Court, Richard Leebove is a public relations consultant, RL Communications, Inc. is Mr. Leebove's public relations firm, and George Geller is a labor lawyer. All three are located in Michigan. Defendants aver that these non-party deponents worked in association with plaintiffs in efforts to avert the revocation of the Conference charters, and subsequently assisted with the establishment of an organization called the "Real Teamster Caucus," which defendants suggest is "a potential unauthorized successor to the Conferences" and "a potential political organization serving electoral objectives of the Conference leaders and their associates, funded with members' dues money and operating without accountability, outside the supervisory mechanisms of the IBT Constitution and the Consent Decree." (Defendants' Memorandum Concerning Appropriate Guidelines for Discovery at 9 (quoting defendants' April 21, 1995, letter to this Court).)

Defendants further aver that these non-party deponents initially "categorically refused to comply with discovery requests regarding their IBT-related activity prior to the event of Conference charter revocation." (*Id.* at 9–10.) Defendants represent that the non-party deponents subsequently "moved for a protective order in the District Court for the Eastern District of Michigan in regard to any questions or document requests relating to their past history in the IBT, and, in certain respects, to any requests involving the [Real Teamster Caucus]," but modified their position by "agreeing to respond in a limited fashion to some of the discovery requests." (*Id.* at 10.)

By letter, dated April 28, 1995, the non-party deponents objected to defendants' request for a pre-trial conference and represented that they "intend to proceed in the Eastern District of Michigan with a motion to quash or modify the subpoenas directed at [them] under Rule 45(c)(3), in the absence of a stipulation by Defendants to accept reasonable limits on the nature and scope of their interrogatories." The non-party deponents argue that the discovery disputes referenced by defendants are properly the subject of their Rule 45 motion filed in federal court in the Eastern District of Michigan. On May 18, 1995, this Court ordered the parties to submit briefs concerning the instant discovery dispute.

Although defendants requested guidance from this Court, plaintiffs and the non-party

deponents both argue that any guidance by this Court concerning the issues raised by the discovery dispute at hand would be inappropriate. Plaintiffs argue that "any 'problems with non-party discovery' are, by definition, between the IBT and non-party witnesses and therefore, to the extent they arise outside this judicial district, fall within the ambit of Federal Rule 45 and are committed to the sound discretion of the subpoena court." (Submission of Conference Parties Concerning Request by IBT Parties for "Discovery Guidelines" at 2.) Similarly, the non-party deponents state that "we respectfully . . . object to the extent that Defendants may be attempting to submit the *specific* issues presented in our pending Rule 45 motion for an advisory determination by this Court." (Memorandum of Law Summarizing Position of Nonparty Deponents Concerning Appropriate Guidelines for Discovery ("Non–Party Deponents' Memorandum") at 6.)

■ As an initial matter, it should be noted that Rule 16(c) affords this Court broad authority to "take appropriate action" with respect to "the formulation and simplification of the issues," "the control and scheduling of discovery," "the need for adopting special procedures for managing potentially difficult or protracted actions," and "such other matters as may facilitate the just, speedy, and inexpensive disposition of the action." Fed. R.Civ.P. 16(c)(1), (6), (12), (16). In view of the broad supervisory powers vested in a district court by Rule 16, defendants' request for a pretrial conference was not inconsistent with the provisions of Rule 45.

Rule 45(c)(3) provides, in relevant part, that "[o]n timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it . . . (iii) requires disclosure of privileged or other protected matter and no exception or waiver applies, or (iv) subjects a person to undue burden." The non-party deponents object to the subpoenas that defendants served on them on the grounds that "[t]he subpoenas served on the nonparty deponents are—quite literally—sweeping. They insist on production of 75 separate categories of documents. All but perhaps 10 of these document categories have no relevance whatsoever to the dissolution of the Area

Conferences." (Non–Party Deponents' Memorandum at 3.) The non-party deponents characterize the subpoenas that defendants served on them as "sweeping, overbroad and unduly burdensome." (*Id.* at 4.)

■ To the extent that the non-party deponents object to the subpoenas on the ground that the subpoenas subject the non-party deponents to an undue burden, their objections are properly the subject of a Rule 45(c)(3) motion brought in the Court that issued the subpoenas—the Eastern District of Michigan. Moreover, the mere fact that the non-party deponents argue that the instant subpoenas are unduly burdensome does not create a need for this Court's guidance concerning discovery in this case. Rule 45 is specifically designed to remedy litigants' disputes regarding whether a subpoena is unduly burdensome, and pursuant to Rule 45, such objections are squarely within the jurisdiction of the district court that issued the subpoena.

However, the non-party deponents also object to the subpoenas on the ground that many of the documents requested are irrelevant to the instant litigation. This objection raises an issue of relevancy that has broad implications for discovery in this action. Therefore, pursuant to Rule 16, it is appropriate for this Court to provide guidance concerning the relevance of the discovery that defendants seek, in furtherance of the control of discovery and the formulation and simplification of the issues presented by this case. This Court's exercise of such supervisory power is authorized and contemplated by Rule 16, and it does not infringe on the authority vested by Rule 45 in the district courts of other jurisdictions. *See In re Baker,* 744 F.2d 1438, 1440 (10th Cir.1984) (Rule 16's "spirit, intent and purpose is clearly designed to be broadly remedial, allowing courts to actively manage the preparation of cases for trial"), *cert. denied,* 471 U.S. 1014, 105 S.Ct. 2016, 85 L.Ed.2d 299 (1985).

■ Turning to the question of whether, in broad terms, defendants may seek discovery concerning (1) the Real Teamster Caucus, or (2) a deponent's IBT-related activity prior to the revocation of the Conference

charters, it is instructive to review the liberal standard for discovery set forth in Rule 26. Rule 26(b)(1) provides, in part, that "[p]arties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action," and "[t]he information sought need not be admissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence." Thus, parties are entitled to discovery concerning "any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351, 98 S.Ct. 2380, 2389, 57 L.Ed.2d 253 (1978); *see also Daval Steel Prods. v. M/V Fakredine*, 951 F.2d 1357, 1367 (2d Cir.1991) ("This obviously broad rule is liberally construed"); *Fletcher v. Atex, Inc.*, 156 F.R.D. 45, 48 (S.D.N.Y.1994). Moreover, the scope of discovery is not limited to the merits of an action but also may include inquiry into facts that may be used to impeach a witness's trial testimony. *See Davidson Pipe Co. v. Laventhol & Horwath*, 120 F.R.D. 455, 462–64 (S.D.N.Y.1988).

Defendants aver that discovery pertaining to the Real Teamster Caucus and to a deponent's IBT-related activities prior to the revocation of the Conference charters reasonably could lead to evidence that would undermine plaintiffs' claims and may form the basis for a counterclaim. Specifically, defendants aver that discovery into these matters is relevant to whether plaintiffs brought this action in good faith, the true purpose of the Real Teamster Caucus as it relates to this action, and plaintiffs' claim for damages.

Defendants have asserted sufficient grounds for seeking discovery regarding the Real Teamster Caucus and each non-party deponent's IBT-related activity prior to the revocation of the Conference charters. As discussed above, Rule 26 establishes a liberal standard for discovery, which permits a party to discover "any matter, not privileged which is relevant to the pending action." In the instant case, defendants' discovery requests may be relevant to the issues of: (1) whether plaintiffs brought this action in good faith; (2) what the true purpose of the Real

Teamster Caucus is, at least as it relates to this action; and (3) the accuracy of plaintiffs' claim for damages. Moreover, the non-party deponents have failed to demonstrate that the requested discovery is irrelevant to the instant case.

In sum, this Memorandum and Order forecloses any deponent from categorically refusing to comply with any discovery request pertaining to the Real Teamster Caucus or to his IBT-related activity prior to the revocation of the Conference charters based solely on the claim that such matters have no relevance to this litigation.

SO ORDERED.