Finally, Hillis' sarcastic comment, "That's a very reasonable approach to take, Your Honor" showed a deliberate lack of respect for the trial judge and his ruling. Intentional sarcasm is the only reasonable interpretation of Hillis' statement, and this comment prompted an immediate order by the trial judge that Hillis remain in the prisoner holding area for one hour. Faced with a disruption that threatened to spill over into another trial judge's afternoon case review session, and with open hostility to the earlier, milder sanction, the trial judge's response was reasonable. Hillis' detention was an appropriate attempt to cure the perception created in the eyes of those present that open-court incivility by *anyone*, even an attorney, would be tolerated.

In the Matter of the Petition of Edmund M. **HILLIS**, Assistant Public Defender, for a Writ of Prohibition and/or Certiorari.

No. 321,2003.

Supreme Court of Delaware.

Submitted: July 21, 2004.

Decided: Aug. 27, 2004.

James Brendan O'Neill of the Office of the Public Defender, Wilmington, DE, for Edmund M. Hillis.

Loren C. Meyers of the Department of Justice, Wilmington, DE, for State of Delaware.

Before STEELE, Chief Justice, HOLLAND, BERGER, and JACOBS, Justices, and LAMB, Vice Chancellor,* constituting the court en banc.

PER CURIAM:

In an Opinion dated March 24, 2004, this Court declined to issue a writ of prohibition or certiorari sought by Edmund M. Hillis, Assistant Public Defender.[1] The petition for a writ challenged the authority of a Superior Court judge to sanction Hillis by imposing upon him the costs of transporting prisoners to court ($267) and by confining him for one hour to a courthouse "holding area." We addressed two issues in that Opinion: the circumstances under which a trial judge may find a person in contempt without providing notice and a hearing, and whether the trial judge's sanction was a reasonable response to Hillis' conduct. Hillis then moved for reargument.

Petitioner's moved for, and we granted, Reargument for the sole purpose of clarifying the authority under which the trial judge imposed the $267 in costs against Hillis.[2] We conclude that the trial judge appropriately assessed the reasonable costs to transport the prisoners to and from the courthouse, pursuant to his inherent administrative authority.[3] Further, the imposition of the costs reflected a reasonable method to recover public funds expended as a result of the administrative delay caused by Hillis' disruptive behavior.

Three May 27, 2003 case reviews scheduled in the New Castle County Superior Court involved individuals that were in the custody of the Delaware Department of Corrections.[4] Hillis, the assigned Assistant Public Defender, represented all three individuals. At the time of the in-court incident, Hillis had not yet consulted with his incarcerated clients. When the trial judge challenged Hillis, asserting that Hillis delayed proceedings by failing to appear when the trial judge believed Hillis knew he should be present in court, Hillis made openly contemptuous, sarcastic and disrespectful comments to the trial judge in open court. Knowing that the trial judge believed that Hillis' actions had delayed the orderly conduct of court business, when asked about the status of his remaining case reviews given his "late" arrival, Hills quipped "we can take care of them now, if you'd like. Just set them for trial or final case review."

We concluded in the March 24 Opinion that Hillis' suggestion that he would unilaterally dispose of the matters scheduled for

---

* Sitting by designation pursuant to Del. Const. Art. IV § 12.

1. *In re Hillis*, 2004 WL 728539, 2004 Del. Lexis 144. Retired Chief Justice E. Norman Veasey served on the *en banc* decisional panel on that opinion and on the decision to grant reargument. His retirement resulted in the designation of Vice Chancellor Lamb to serve on the *en banc* panel deciding this motion for reargument.

2. We reaffirm the decision of March 24, 2004 in every respect recognizing that this opinion on reargument clarifies without contradicting 2004 WL 728539, 2004 Del. Lexis 144.

3. *Cebenka v. Upjohn*, 559 A.2d 1219 (Del. 1989).

4. The background facts can be found described in detail in the Opinion of March 24, 2004.

case reviews by "just" having them set for trial or scheduled for a final case review, constituted a form of immaturely rash and sarcastic threat. Although his reaction may have reflected what he believed to be unfair criticism from the presiding judge, his suggested refusal to consult with the incarcerated individuals by "just" having them rescheduled for a later date or set for trial without any attempt to resolve their matters by negotiated pleas would have derailed the afternoon proceedings. Whether or not Hillis believed that he had been unfairly chastised by the presiding judge, we consider his declared unwillingness to proceed with his scheduled responsibilities for that afternoon unacceptable behavior of an officer of the Court. The trial judge correctly understood the implications of Hillis' remark and imposed the $267 costs for transporting Hillis' clients to court.

In our earlier opinion, we lamented that incivility in open court infects the process of justice in many ways: It compromises the necessary public trust that the system will produce fair and just results; it negates the perception of professionalism in the legal community, and it erodes respect for everyone involved in the process.[5] Incivility can also infect the process of justice by imposing an additional financial burden on an already overburdened publicly funded system of justice. Case reviews are an attempt to exhaust *every* opportunity to dispose of cases before *valuable* trial days are set aside. They are an important mechanism in the criminal case management process designed to save limited trial days for cases which cannot be resolved by any other proceeding except a trial. By his own actions, and in this case, his refusal to act, Hillis ignored the fact that public funds had been expended to bring his clients to court for case review and that his sarcastically expressed disinclination to speak with his clients that day disrupted the orderly administration of that criminal case management process. The trial judge reacted appropriately and within his inherent authority by imposing a sanction designed to recoup the administrative costs *directly resulting* from Hillis' overt refusal to cooperate. In *Cebenka,* we discussed our "concern about the 'delays caused by negligent counsel [which] burden the taxpayers and court system.'"[6] Sanctions are a necessary instrument to "insure reasonable management requirements for case preparation."[7] Secondary sanctions may compensate for inconvenience and expense incurred because of non-compliance with reasonable management orders. We note that it has "always been within the inherent power of the courts to manage their affairs as an independent constitutional branch of government."[8] Although *Cebenka* speaks directly to delays in the civil case management process resulting from attorney negligence, the need for court administrative control over the criminal case management process is at least as critical as that over civil case management. The imposition of the costs of transporting Hillis' clients directly resulted from behavior disruptive to the administration of the criminal case management process and was reasonably related to defray the costs of that disruptive behavior. Nor can it be reasonably argued that the imposition of

---

5. *See* Ty Tasker, *Sticks and Stones: Judicial Handling of Invective in Advocacy,* The Judges' Journal 19–20 (2003).

6. 559 A.2d at 1224 (citing *In re Sanction of Baker,* 744 F.2d 1438, 1440 (10th Cir.1984), cert. denied, 471 U.S. 1014, 105 S.Ct. 2016, 85 L.Ed.2d 299 (1985)).

7. *Id.* (citing 744 F.2d at 1441).

8. *Id.* (citing *Roadway Express v. Piper,* 447 U.S. 752, 764–67, 100 S.Ct. 2455, 65 L.Ed.2d 488 (1980); *Link v. Wabash Railroad Co.,* 370 U.S. 626, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962)).

the administrative costs directly relating to Hillis' behavior somehow implicates Hillis' due process rights. The disruption occurred in the presence of the presiding judge who made a finding and entered the sanction immediately after the observed conduct. A trial judge's authority to impose administrative sanctions for disruptive behavior by counsel or a party litigant is not limited to circumstances occurring in the trial judge's presence. A trial judge may impose sanctions for disruptive behavior pursuant to the inherent authority of the court whenever the facts support a finding that the actions of counsel or a party litigant have directly disrupted an orderly case management process. The sanctions must be reasonably related to the consequences of the disruptive behavior. The standard of review for the imposition of sanctions will be abuse of discretion. Here, the disruptive behavior is clear on the record, the trial judge's sanction is reasonably related to the consequences of the disruption and we consequently find no abuse of discretion in the imposition of the $267 sanction.

The Writs of Prohibition and Certiorari are DENIED.